**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WILLIAM J. ADCOCK,

               Plaintiff,

     v.

NANCY A. BERRYHIL,[1]
Acting Commissioner of Social
Security,

              Defendant.

Case No. EDCV 16-1222 SS

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

    William J. Adcock ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Agency") denying his application for Disability Insurance Benefits ("DIB") and

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. <u>See</u> 42 U.S.C. § 205(g).

Supplemental Security Income ("SSI") benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 12-13). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On April 16, 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). (Administrative Record ("AR") 828-40). Plaintiff alleged that he became unable to work on December 7, 2011 due to emphysema, chronic obstructive pulmonary disease ("COPD"), blood clots in the lungs, pneumonia, and a fungal infection. (AR 834, 853). The Agency denied Plaintiff's application on August 7, 2012. (AR 706-710). On May 8, 2013, the Agency denied Plaintiff's application upon reconsideration. (AR 712-717). On July 2, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 720-21). On June 30, 2014, ALJ Alan Markiewicz conducted a hearing to review Plaintiff's claim. (AR 628-61). On September 25, 2014, the ALJ found that Plaintiff was not disabled under the Social Security Act. (AR 609-26). Plaintiff sought review of the ALJ's decision before the Appeals Council. The Appeals Council denied Plaintiff's application on April 8, 2016. (AR 1-7). The ALJ's decision then became the final decision of the Commissioner. Plaintiff commenced the instant action on June 9, 2016. (Dkt. No. 1).

Plaintiff was born on September 2, 1955. (AR 864). He was 56 years old as of the alleged disability onset date of December 7, 2011. He was 58 years old when he appeared before the ALJ. (AR 632). Plaintiff graduated from high school and completed one year of junior college. (AR 632). He previously worked as a sales clerk, hotel clerk, and security guard. (AR 880).

## A. **Plaintiff's Testimony**

Plaintiff testified that he lives by himself at the Desert Lodge hotel. (AR 648). He stays there "for free" in exchange for doing "as much work to work off" the room as he can. (Id.). He stated that he mainly works at the front desk. (Id.). Specifically, Plaintiff checks people in and out of the hotel. (AR 650). He stands while working at the front desk. (Id.). Plaintiff also sits down to do paperwork. (Id.). He also cleans a "little bit", including wiping down the counter and sweeping the floor. (Id.). When he sweeps the floors, it usually takes about ten minutes. (Id.). He is short of breath once he is done sweeping. (Id.). Plaintiff testified that he typically tries to work from 8:30 to 10:30 in the morning. (AR 655). He then goes back to his room to rest. (Id.). He returns to the office if he is needed. (Id.). After he does what is needed, he will return to his room to rest. (Id.). Plaintiff stated that the longest amount of time that he can work is "maybe two hours" at a time. (Id.). He

testified that he tries to do this work as much as he can. (AR 648).

Plaintiff testified that his last full-time job consisted of light maintenance, cleaning, and front desk work at the Palm Grove hotel. (AR 633). He stopped working in February of 2012 when he came down with pneumonia and blood clots. (Id.). Plaintiff testified that he worked at the Palm Grove hotel for approximately four years. (AR 633). Before that, he worked in retail at an adult bookstore called Perez Images for almost nine years. (AR 634).

Plaintiff testified that the main reason he stopped working was because of his COPD. (AR 637-638). He stated that when he tries to do work he has to take breaks due to his breathing. (Id.). Plaintiff testified that he can only walk about 50 or 60 feet without stopping to rest. (AR 644-645). He testified that he can do "minimal standing." (AR 645). He can stand for about five minutes without moving if he has to. (AR 649-650). He further testified that he can sit for "maybe two hours" at a time. (AR 646-646). Plaintiff testified that he began using a walker the month before the hearing. (AR 647).

Plaintiff stated that he has had issues with depression since his health began to decline. (AR 647). He testified that he has not recently taken any medicines to help with his depression. (Id.). He testified that in the past he was seeing a psychiatrist and was on a "depression pill." (Id.). He stated that he started

4

feeling better but stopped taking the medicine after about six months because he did not like it. (AR 647-648).

Plaintiff testified that his driver's license expired a few years back. (AR 649). He stated that he takes the Sun bus for transportation. (Id.).

**B.  Consultative Examiner, Kara Cross, Ph.D., ABFE, ABPS**

On April 6, 2013, consultative examiner Dr. Kara Cross, Ph.D. in Clinical Psychology, performed a Complete Mental Evaluation of Plaintiff. (AR 993-98). Dr. Cross noted that there were no psychiatric records for review. (AR 993).

Under "Chief Complaints," Dr. Cross commented that Plaintiff stated that he "has COPD and trouble concentrating. He state[d] that he feels anxious about his health. He spends a lot of time thinking 'oh what if.'" (AR 993).

Under "History of Present Illness," Dr. Cross noted that Plaintiff "had outpatient counseling services back in 1989. He went for two weeks and stopped. He states that he was hospitalized in 1989 for wanting to kill himself. He was in the hospital for two solid weeks. [Plaintiff] reports that he no longer feels suicidal and does not feel homicidal." (AR 994).

Under "Habits," Dr. Cross noted that Plaintiff "used to smoke pot back in 1970s. He used to drink alcohol at parties but does

not use either anymore." (AR 994). Under "Legal History," Dr. Cross commented that Plaintiff "was arrested once for shoplifting and spent one and a half days in jail." (Id.). Under "Employment History," Dr. Cross noted that Plaintiff worked in retail for nine years and "last worked in 2009. He stated that he was laid off." (Id.).

Dr. Cross noted that Plaintiff is able to pay bills and can handle cash appropriately. (AR 995). He is able to go out alone. (Id.). Plaintiff's relationships with family and friends are good. (Id.). Plaintiff can focus attention. (Id.). Plaintiff has no difficulty completing household tasks. (Id.). Plaintiff has no difficulty making his decisions. (Id.). Dr. Cross noted that, on a daily basis, Plaintiff

> can dress and bathe, cook, clean, run errands, and go shopping. He maintains his own residence as far as cleanliness is concerned. He cleans rooms for his room and board. He states that he is living in a hotel and is cleaning rooms in exchange for a place to live and food to eat. He states that he can do light cleaning in these rooms but cannot do the heavy cleaning. He feels very sad and depressed over his deteriorating health and stamina.

(AR 995).

Under "Thought Processes," Dr. Cross noted that Plaintiff was coherent and organized. (AR 996). Under "Thought Content," Dr. Cross stated that Plaintiff was relevant and non-delusional. (Id.). Dr. Cross further commented that there "is no bizarre or

psychotic thought content.  There is no suicidal, homicidal or paranoid ideation during the interview.  [Plaintiff] denies recent auditory or visual hallucinations.  [Plaintiff] does not appear to be responding to internal stimuli during the interview."  (Id.).

Under "Mood and Affect," Dr. Cross commented that "[m]ood is somewhat sad and affect is a little tearful and congruent with thought content.  [Plaintiff] is tearful.  [Plaintiff] is anxious.  [Plaintiff] denies any feeling of hopelessness, helplessness or worthlessness."  (Id.).

Under "Speech," Dr. Cross stated that speech was "normally and clearly articulated, without stammering, dysarthria, neologisms, tangentiality, circumstantiality or loosened, unusual or blocked associations."  (Id.).

Dr. Cross further noted that Plaintiff was alert and oriented to time, place, person, and purpose. (Id.). Dr. Cross stated that Plaintiff was able to repeat four digits forward and backward. (Id.).  Plaintiff was able to recall three items immediately and after five minutes. (Id.).  Plaintiff was able to recall who George Washington was and a school day attended as a child.  (Id.).

Under "Concentration and Calculation," Dr. Cross stated that Plaintiff "could not perform serial threes.  [Plaintiff] knew that 4 dollars plus 5 dollars is 9 dollars.  [Plaintiff] was not able to do alpha numeric reasoning.  [Plaintiff] was able to follow [] conversation [with Dr. Cross] well."  (Id.).  Later, she commented

that Plaintiff could do serial threes but not serial sevens.  (AR 997).  Plaintiff could say the months of the year.  (Id.).

Dr. Cross noted that she asked Plaintiff how an airplane and helicopter are the same.  (Id.).  He responded, "[t]hey are up in the sky and they fly around."  (Id.).  However, he did not know how "up" and "south" are the same.  (Id.).

Dr. Cross commented that Plaintiff's insight and judgement appeared to be intact regarding his current situation.  (Id.).  Dr. Cross diagnosed Plaintiff with Dysthymia and a general anxiety disorder.  (Id.).  Dr. Cross gave Plaintiff a Global Assessment Functioning ("GAF") score of 60.[2]  (Id.).  Under "Prognosis," Dr. Cross stated that "[f]rom a psychiatric standpoint, [Plaintiff's] condition is deemed fair."  (Id.).

Under "Functional Assessment," Dr. Cross stated that, based on her examination, Plaintiff is able "to understand, remember, and carry out simple one or two-step job instructions … [u]nable to do detailed and complex instructions."  (Id.).  She noted that he has mild impairments relating and interacting with co-workers and the public.  (AR 998).  She further noted that he has mild impairments maintaining concentration and attention, persistence and pace.  (Id.).  She also stated that he has mild impairments maintaining regular attendance in the work place and performing

---

2    A GAF score of 51–60 reflects moderate symptoms or moderate difficulty in social or occupational functioning. *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Rev. 2000).

work activities on a consistent basis. (Id.). She noted that he is unimpaired in his ability to associate with day-to-day work, to accept instructions from supervisors, and to perform work activities without special or additional supervision. (Id.).

### C. State Agency Physician, Gina Rivera-Miya, M.D.

On March 8, 2013, Dr. G. Rivera-Miya, M.D., reviewed Plaintiff's record at the reconsideration stage. (AR 697-703). Dr. Rivera-Miya listed Plaintiff's diagnoses as chronic pulmonary insufficiency, COPD, affective disorder, and anxiety disorder. (AR 697). Dr. Rivera-Miya agreed with a recommendation by disability adjudicator/examiner V. Casison. (Id.). Casison stated that Plaintiff did not assert psychological impairments at the initial application level. (Id.). However, Casison noted that Plaintiff later alleged anxiety and depression regarding his health and stamina. (Id.).

Casison noted that Plaintiff had mild limitations from his mental health conditions. (Id.). Casison noted that Plaintiff's activities of daily living were adequate with no limitations in social functioning. (Id.) Casison commented that Plaintiff is not taking any psychological medications. (Id.). Casison concluded that these findings suggest Plaintiff's mental health conditions are not severe. (Id.).

Dr. Rivera-Miya commented that the "evidence does not support ongoing severe psych limitations. Benign findings on exam and

[activities of daily living] are functional.  No recent psych tx.
Psych is nonsevere." (Id.) (emphasis in original).  Dr. Rivera-
Miya determined that Plaintiff had no restriction in activities of
daily living and maintaining social functioning, but he had mild
difficulties in maintaining concentration, persistence or pace and
one or two episodes of decompensation.  (Id.).

Dr. Rivera-Miya determined that Dr. Cross's opinion about
Plaintiff's limitations was more restrictive than her own.  (AR
701)  Dr. Rivera-Miya noted that Dr. Cross's opinion "contains
inconsistencies, rendering it less persuasive." (Id.).  She stated
that "[t]he opinion is without substantial support from other
evidence of record, which renders it less persuasive." (Id.).  She
also commented that Dr. Cross's opinion "is an overestimate of the
severity of the individual's restrictions/limitations and based
only on a snapshot of the individual's functioning." (Id.).

### D.  **Vocational Expert Testimony**

Vocational Expert ("VE") Sandra Fioretti testified at
Plaintiff's hearing before the ALJ.  (AR 656-659).  The VE testified
that she would classify Plaintiff's previous work as a hotel clerk
as light3, semiskilled.  (AR 656).  She testified that his previous

---

3 "*Light work.* Light work involves lifting no more than 20 pounds
at a time with frequent lifting or carrying of objects weighing up
to 10 pounds. Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some
pushing and pulling of arm or leg controls. To be considered capable
of performing a full or wide range of light work, you must have

work cleaning at the hotel classified as light, unskilled work. (AR 657). She stated that his previous work as a sales clerk classified as light, semiskilled. (Id.).

The ALJ asked the VE to consider a series of factors in creating three hypotheticals for determining Plaintiff's ability to work. The ALJ's first hypothetical included an individual the same age and with the same education and work experience as Plaintiff. (AR 657). The hypothetical included an individual with certain postural and environmental limitations. (AR 657-658). The VE testified that an individual with the described limitations could perform work as a sales clerk or hotel clerk as it's done in the national economy. (AR 658). However, the VE testified, the individual could not perform the work as Plaintiff previously performed it because they could not clean with the described limitations. (Id.)

The ALJ's second hypothetical included all the limitations described in the first hypothetical, however the individual was further limited to simple, repetitive tasks. (Id.). The VE testified that an individual with these hypothetical limitations could not do Plaintiff's past work or work as a sales clerk or hotel clerk. (Id.).

_____

the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567 (b).

The ALJ's third hypothetical included an individual with more restrictive postural limitations than the first two hypotheticals. (AR 659). The VE testified that this hypothetical individual could not do any of Plaintiff's past work. (Id.).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work?  If so, the claimant is found not disabled. If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

See 20 C.F.R. §§ 404.1520, 416.920; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

In between steps three and four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 CFR 416.920(e).  To determine the claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.  20 CFR § 416.1545(a)(2).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  "Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry."  Id. at 954.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100;

Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 622). At step one, the ALJ observed that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since December 7, 2011, the alleged disability onset date. (AR 614). At step two, the ALJ found that Plaintiff's severe impairments were COPD with a history of pulmonary emboli and cellulitis of the left ankle. (AR 615). The ALJ found that Plaintiff's medically determinable mental impairment of dysthymia was not severe. (Id.).

In making this finding, the ALJ considered four broad functional areas set out in the disability regulations for

14

evaluating mental disorders and in section 12.00C of the Listing of Impairments, known as the "paragraph B" criteria. See 20 C.F.R., Part 404, Subpart P, Appendix 1. The "paragraph B" criteria include a claimant's daily activities; social functioning; concentration, persistence, or pace; and episodes of decompensation. (AR 615-16).

The ALJ found that Plaintiff did not meet any of the "paragraph B" criteria. (AR 615-16). The ALJ determined that "[Plaintiff] has no limitation [regarding his daily activities]," because he lives alone and "is able to maintain his grooming and hygiene, take public transportation, manage his finances, cook, shop, run errands, and perform household chores." (AR 615). Moreover, Plaintiff testified that "he is able to assist with simple chores and paper work at a hotel." (Id.).

The ALJ found that Plaintiff has no limitation in the area of social functioning. (Id.). The ALJ observed that Plaintiff "reported that his relationships with family and friends are good and that he is able to go out alone." (Id.). The ALJ found that Plaintiff has a mild limitation in the area of concentration, persistence, and pace. (Id.). Specifically, the ALJ found that "[d]espite [Plaintiff's] complaints of poor concentration, he admitted that he is able to focus attention." (AR 615). Moreover, the ALJ noted that a "mental status examination revealed he was alert and oriented to time, place, person, and purpose; able to repeat four digits forward and backward; he was able to recall three items immediately and after five minutes; he was able to

perform simple math; he was able to perform serial threes; and he was able to follow a conversation." (AR 615-16). However, Plaintiff was unable to perform serial sevens or do alpha-numeric reasoning. (AR 616). Accordingly, the ALJ found that Plaintiff has mild limitations in this functional area.

Lastly, the ALJ found that Plaintiff had experienced no episodes of decompensation of extended duration. (Id.). Thus, the ALJ determined that, because Plaintiff's medically determinable mental impairment causes no more than "mild" limitations in any of the first three functional areas and "no" episodes of decompensation of extended duration in the fourth area, it is non-severe. (Id.). The ALJ also noted that, despite Plaintiff's complaints of poor concentration, he "has not received any specialized mental health treatment since 1989." (Id.).

In making this determination, the ALJ gave "little weight" to Dr. Cross's opinion. (Id.). The ALJ reasoned that Dr. Cross's opinion was based on a one-time examination of Plaintiff rather than on a longitudinal treatment history. (Id.) Additionally, the minimal objective findings from Dr. Cross's examination were not consistent with her own opinion. (Id.). The ALJ also noted that Dr. Cross's opinion was inconsistent with the objective medical evidence and the record as a whole, "which revealed that [Plaintiff] has not sought specialized mental health treatment since 1989." (Id.).

By contrast, the ALJ gave "significant weight" to the opinion of the State agency psychological consultant that Plaintiff has no severe mental impairment. (Id.). The ALJ reasoned that the State agency consultant's opinion was "reasonable and consistent with the objective medical evidence." (Id.). The ALJ commented that there were "minimal clinical findings to support the degree of limitation alleged by the [plaintiff]." (Id.). Moreover, the consultant's "determination is consistent with the lack of any regular mental health treatment." (Id.).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart Part P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925-26). (AR 617).

The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours in an eight-hour workday with customary breaks; he is precluded from climbing ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and he should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.

(AR 617).

In arriving at his conclusion, the ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effect of his symptoms was "less than fully credible." (AR 619). The ALJ stated that: (1) Plaintiff's daily activities and interactions undermined his allegations of disabling functional limitations; (2) Plaintiff failed to follow treatment recommendations; (3) Plaintiff was not taking medications for his respiratory conditions and denied seeing a doctor in recent months; (4) although Plaintiff alleges difficulty concentrating, Plaintiff did not exhibit difficulty concentrating while at the hearing; (5) Plaintiff was jailed for committing a crime of moral turpitude, which placed doubt on the veracity of his allegations; (6) Plaintiff made inconsistent statements regarding matters relevant to disability; and (7) the record does not list restrictions recommended by a treating physician. (AR 619-20).

The ALJ noted, "[a]lthough the medical evidence of record reveals that the [plaintiff] has a history of alcohol and cannabis abuse, there is no credible evidence that this abuse prevented him from being able to perform work activities on a regular and continuing basis." (AR 620). The ALJ concluded that Plaintiff's alcohol abuse was not a contributing factor material to the issue of disability. (Id.).

At step four, the ALJ determined that Plaintiff could perform his past relevant work as a sales clerk and hotel clerk. (AR 621). Therefore, the ALJ concluded, Plaintiff is not disabled, as defined

by the Social Security Act (20 C.F.R. §§ 404.1520(f) and 416.920(f)). (AR 621-22).

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F. 3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its

judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21

(citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453,

1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff contends that the ALJ erred in rejecting consultative examiner Dr. Cross's opinion. (Memorandum in Support of Plaintiff's Complaint ("Pl. MSO") at 5-11).

The Court disagrees. The record demonstrates that the ALJ gave proper weight to Dr. Cross's opinion. Accordingly, for the reasons discussed below, the Court finds that the ALJ's decision must be AFFIRMED.

**A. <u>The ALJ's Findings Regarding Plaintiff's Alleged Mental Impairment Do Not Require Remand</u>**

As a threshold matter, the ALJ's finding that Plaintiff's mental impairment is non-severe does not warrant remand. Plaintiff fails to directly raise this issue in his Memorandum in Support of the Complaint. Rather, Plaintiff's only claim is that "[w]here the ALJ fails to give specific and legitimate reasons for rejecting the opinions of the consultative psychologist, the court should reverse and remand." (Pl. MSO at 5).

Thus, any argument that the ALJ erred in finding Plaintiff's alleged mental impairment non-severe is waived for failure to properly raise the issue. See Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001) (finding that claims raised by Appellant for the first time on appeal—including challenges to the ALJ's rejection of subjective testimony and conclusory Step 3 equivalence finding—were waived); see also Hilfinger-Dowell ex rel. Dowell v. Astrue, 232 F. App'x 744, 746 (9th Cir. 2007) (finding that Appellant waived arguments regarding ALJ's credibility determinations and residual functional capacity assessment by failing to raise them in the district court).

Even had Plaintiff raised this issue, the ALJ did not err in finding Plaintiff's mental impairment to be non-severe. Plaintiff testified that he currently performs hotel work in exchange for a place to stay. (AR 648). Specifically, Plaintiff testified that he mainly works at the front desk, checking people in and out. (Id.). He also does paperwork. (Id.). He also does a little bit of cleaning, including wiping down the counters and sweeping. (Id.). Plaintiff testified that he returns to the office from his room when his employer needs him. (AR 655).

Thus, findings of both the VE and ALJ that Plaintiff has the mental capacity to perform his past work at a hotel are supported by substantial evidence in the record. Clearly, Plaintiff's alleged psychological impairments do not prevent him from functioning in an employment setting. He is able to perform work and interact with a supervisory figure. Additionally, results from

Plaintiff's consultative examination indicate that he can focus attention. (AR 995). Plaintiff has no difficulty making decisions. (Id.). Results also indicate that Plaintiff is unimpaired in his ability to associate with day-to-day work, to accept instructions from supervisors, and to perform work activities without special or additional supervision. (AR 998).

As the ALJ stated:

> Despite his impairments, the [plaintiff] has engaged in a somewhat normal level of daily activity and interaction. He admitted activities of daily living, including maintaining his grooming and hygiene, taking public transportation, managing his finances, cooking, running errands, shopping, performing household chores, and assist[ing] with simple chores and paperwork at a hotel. [] Some of the physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment.

(AR 619).

Accordingly, the evidence would support a finding of a non-severe impairment at step-two. While Plaintiff currently works part-time at the hotel where he stays, none of his alleged limitations, even if accepted as true, necessarily prevent him from working full-time in the same position.

## B. **The ALJ Provided Specific And Legitimate Reasons For Rejecting Dr. Cross's Opinion**

There are, in general, three types of medical opinions in social security cases:  the opinions of (1) treating physicians who examine and treat, (2) examining physicians who examine but do not treat, and (3) non-examining physicians who neither examine nor treat.  Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).  Treating physicians are given the greatest weight because they are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Accordingly, where a treating physician's opinion is refuted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996) (ALJ must provide clear and convincing reasons for rejecting an unrefuted treating physician's opinions); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

Similarly, the Commissioner may reject the controverted opinion of an examining consultative physician only for "specific and legitimate reasons that are supported by substantial evidence." Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).  The opinion of a non-examining, non-treating physician does not constitute substantial evidence that justifies rejecting the opinion of either

23

an examining or a treating physician unless it is consistent with and supported by other evidence in record. <u>Lester</u>, 81 F.3d at 831; <u>Morgan v. Comm'r of Soc. Sec.</u>, 169 F.3d 595, 600-01 (9th Cir. 1998); § 404 .1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.")

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons to reject the opinion of consultative examining psychologist, Dr. Cross, in favor of the State agency physician's opinion. (Pl. MSO at 5).

Specifically, Plaintiff asserts that (1) the ALJ may not reject Dr. Cross's opinion solely because it was based on a one-time encounter, rather than a longitudinal treatment history; (2) the ALJ incorrectly found that the minimal objective findings from Dr. Cross's examination were not consistent with her opinion; (3) the ALJ may not reject Dr. Cross's opinion on the basis that Plaintiff has not had specialized treatment since 1989 because "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their conditions reflects a potentially serious mental illness"; and (4) the "summary of the opinions of Dr. Rivera-Miya included the inability to complete serial threes, sevens, or do alphanumeric reasoning, or his inability to know the difference of 'up' and 'south'." (Pl. MSO at 8-10).

This Court disagrees and finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Cross's opinion.

**1. <u>One Time Examination</u>**

Plaintiff argues that the ALJ improperly rejected Dr. Cross's opinion because it was based on a one-time examination rather than a longitudinal treatment history. Plaintiff argues that this "does not provide a basis for rejecting the examining physician's opinion." (Pl. MSO at 8).

Plaintiff's characterization lacks context. The ALJ stated that he afforded "little weight" to Dr. Cross's opinion. (AR 616). In so doing, the ALJ considered Dr. Cross's brief examining relationship as one of several factors. The other factors included (1) the fact that the minimal objective findings from Dr. Cross's examination were inconsistent with her ultimate opinion of disability and (2) the fact that her opinion was inconsistent with objective medical evidence and the record as a whole.

Moreover, it is entirely appropriate for the ALJ to consider the length of the physician-patient relationship in determining how much weight to afford a physician's opinion. The Regulations specifically enumerate length of relationship as one reason why treating physicians are generally afforded greater weight than consultative examiners. 20 C.F.R. § 404.1527 ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be … able to provide a detailed,

longitudinal picture of your medical impairment(s) … that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations … ").

Thus, the fact that Dr. Cross saw Plaintiff once is a reasonable factor to consider in conjunction with others when affording his opinion little weight.

## 2. **Minimal Objective Findings**

Plaintiff argues that the ALJ was erroneous in his determination that the minimal objective findings from Dr. Cross's examination conflicted with her ultimate opinion. (Pl. MSO at 8). Plaintiff argues, rather, that the objective findings support Dr. Cross's opinion. (Id.). Plaintiff bolsters his argument with the fact that he did not know how "up" and "south" were the same during the examination. (Id.). He similarly relies on the fact that he could not do alpha numeric reasoning. (Id.).

Plaintiff also points to Dr. Cross's finding that he was unable to perform serial threes[4] and sevens and states that the "fact that Social Security in evaluating mental listings regarding *concentration, persistence or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in

---

[4]  Dr. Cross initially notes that Plaintiff could not perform serial threes (AR 996), but later notes that he could. (AR 997).

work settings utilizes the serials three and seven tests to evaluate a claimant lead to one reasonable conclusion – a severe mental impairment exists."  (Pl. MSO at 8-9).

As a threshold matter, it was entirely appropriate for the ALJ to consider lack of supporting objective evidence in affording little weight to Dr. Cross's opinion.  Moreover, the ALJ considered the objective findings noted by Plaintiff, stating that the "mental status examination revealed … [that Plaintiff] was unable to do alphanumeric reasoning or serial sevens."  (AR 616).  However, the ALJ balanced these findings with the remainder of the objective evidence from Dr. Cross's examination, stating that "[o]therwise, the findings were within normal limits."  (AR 616).  The ALJ concluded that "the minimal objective findings from [Dr. Cross's] examination … are not consistent with her opinion."  (Id.).

Thus, the ALJ appropriately afforded little weight to Dr. Cross's opinion based on the fact that certain of her conclusions contradicted the majority of her objective evidence.

### 3. No Specialized Mental Health Treatment

Plaintiff argues that it was error for the ALJ to give little weight to Dr. Cross's opinion based on the fact that Plaintiff has not had specialized mental health treatment since 1989.  (Pl. MSO at 9).  Plaintiff asserts that the "lack of mental health treatment does not mean [Plaintiff] does not have a mental illness."  (Id.).  However, conservative treatment can diminish a plaintiff's

credibility regarding the severity of an impairment.  See <u>Parra</u> <u>v. Astrue</u>, 481 F.3d 742, 750—51 (9th Cir. 2007); <u>see also</u> <u>Meanel</u> <u>v. Apfel,</u> 172 F.3d 1111, 1114 (9th Cir. 1999) (Claimant's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received."); <u>Johnson v. Shalala,</u> 60 F.3d 1428, 1434 (9th Cir.1995) (ALJ properly concluded claimant's excess pain testimony was not credible because, among other reasons, claimant's treating physician prescribed only conservative treatment, "suggesting a lower level of both pain and functional limitation").

Plaintiff's specialized treatment in 1989 indicates that, at a minimum, he should have been aware of specialized treatment opportunities and how to gain access to them.  Moreover, the ALJ considered the fact that Plaintiff did not have financial barriers to obtaining appropriate medical care.  The ALJ noted that "there is no evidence that [Plaintiff] could not have obtained low cost or no cost medical care as necessary".  (AR 619).  "[A] treating physician noted that since [Plaintiff] was able to find cigarettes and alcohol, there was no reason why he should not be able to afford [treatment]."  (AR 620).  Thus, the ALJ reasonably concluded that Plaintiff could financially access the treatment he needed for his alleged impairments.  Plaintiff's failure to seek mental-health treatment that was commensurate with his complaints constitutes objective evidence of conservative care.  The ALJ reasonably concluded that such evidence contradicts Dr. Cross's opinion.

Plaintiff contends that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. (Pl. MSO. at 9-10). Thus, he argues, the fact that he did not seek treatment is not a substantial basis for rejecting Dr. Cross's assessment. (Id.).

A review of the record suggests that Plaintiff's own testimony belies this argument. Plaintiff testified that he has had issues with depression since his health began to decline. (AR 647). However, he testified that he has not recently taken any medicine to help with this depression. (Id.). He testified that in the past he was seeing a psychiatrist and was on a "depression pill." (Id.). He stated that he started feeling better but stopped taking the medicine after about six months because he did not like it. (AR 647-648). Thus, Plaintiff admitted having access to medication that he knew could alleviate his alleged depression. However, he consciously elected not to take it.

Though Plaintiff contends that under Nguyen v. Chater, 100 F.3d 1462 (9th Cir.1996), his treatment and medication history should not be construed against him, Nguyen is distinguishable. In Nguyen, the ALJ discounted evidence of depression because a claimant failed to seek treatment for any mental disorder "until late in the day," and the Ninth Circuit found it to be unreasonable "to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." 100 F.3d at 1465. Here, Plaintiff sought treatment in the past but discontinued recommended

medications. Plaintiff's discontinuation of care reasonably suggests that his symptoms were not as severe as alleged. Moreover, the record does not afford any compelling reason to view Plaintiff's departures from prescribed treatment as part of his alleged underlying mental afflictions.

Thus, the record demonstrates that Plaintiff knowingly shunned treatment opportunities for an allegedly debilitating condition. The ALJ reasonably concluded that Plaintiff's failure to seek mental health treatment contradicts Dr. Cross's opinion. Because the ALJ's conclusion here was reasonable, the Court should not disturb it. See Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## 4. **Non-examining physician**

Plaintiff argues that the ALJ "gave more weight to the opinions of Dr. Rivera-Miya … [and that] [t]he summary of [these opinions] included the inability to complete serial threes, sevens, or do alphanumeric reasoning, or his inability to know the difference of 'up' and 'south.'" (Pl. MSO at 10). Plaintiff appears to argue that, because Dr. Rivera-Miya acknowledged these results from Dr. Cross's examination, the ALJ should have found Plaintiff disabled when affording her opinion more weight.

Plaintiff's argument lacks merit. After considering and balancing Plaintiff's record, including the minimal evidence that supported his allegations, Dr. Rivera-Miya's ultimate opinion was that Plaintiff is not disabled. It was reasonable for the ALJ to afford greater weight to Dr. Rivera-Miya's ultimate opinion. Dr. Rivera-Miya's opinion was consistent with the majority of the objective medical evidence.

The opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician." Lester, 81 F.3d at 831. However, opinions of non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record of a Social Security proceeding. Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002). See also § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.")

As the ALJ noted, Dr. Rivera Miya's opinion is "reasonable and consistent with the objective medical evidence. There are minimal clinical findings to support the degree of limitations alleged by the [plaintiff]. Moreover, [Dr. Rivera Miya's] determination is consistent with the lack of any regular mental health treatment." (AR 616).

**VIII.**

**CONCLUSION**

Accordingly, IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT FURTHER IS ORDERED that the Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:   June 6, 2017

                                    /S/
                        SUZANNE H. SEGAL
                        UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**